**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 93-2453
_____


SHELIA MARIE BROTHERS, Individually
and as Next Friend of Minor Children,
BRIENT BROTHERS, ROLAND BROTHERS, III,
and DANRICA BROTHERS; and ROLAND J. BROTHERS, Sr.,

Plaintiffs-Appellants,


VERSUS

JOHNNY KLEVENHAGEN,
in His Official Capacity as
Sheriff of Harris County, Texas,
and HARRIS COUNTY, TEXAS,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Texas
_____

(August 1, 1994)

Before GARWOOD, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Plaintiffs appeal a summary judgment in their excessive force suit against Harris County, Texas, and its sheriff. Finding no reversible error, we affirm.

I.

On November 5, 1988, Roland Brothers, Jr., a/k/a Michael Reed, was arrested by the Jersey Village Police Department for auto theft. Brothers spent a few hours in a cell at the Jersey Village police facility. Because there were outstanding felony and misdemeanor warrants for his arrest, the Jersey Village police turned Brothers over to Harris County sheriff's deputies Barry Rizk and Robert Nichols, who transported Brothers to the Harris County Jail. They handcuffed Brothers, restrained his legs, and placed him in the rear of the sheriff's vehicle.

When they arrived at the Harris County Jail, the deputies drove into the "sallyport" area behind the jail.[1] As the deputies exited the car and proceeded to the area where they were required to check their weapons, they noticed that Brothers somehow had managed to remove the handcuffs and leg restraints and was running from the car toward the entrance to the sallyport that they had just entered. The automatic door to the sallyport entrance was in the process of coming down.

Fearing that Brothers would escape, the deputies several times shouted at him to stop. As Brothers attempted to crawl under the automatic door, the deputies drew their weapons and fired twelve times. Brothers died from gunshot wounds.

Family members filed suit in state court pursuant to the Texas Wrongful Death Statute and 42 U.S.C. § 1983 against the county,

_____

[1] The "sallyport" is a secure area at the rear of the jail where incoming prisoners are unloaded and escorted into the building for booking.

against Johnny Klevenhagen, in his official capacity as sheriff, and against Rizk and Nichols. The defendants removed the action to federal court, and Rizk and Nichols were voluntarily dismissed by plaintiffs.

The parties filed cross-motions for summary judgment. Both deputies testified in depositions that they shot Brothers in order to prevent his escape. They knew that he was unarmed, and they had no reason to believe that he was a danger to them or anyone else. It is undisputed that the deputies acted in accordance with the official policy of the sheriff's department, based upon TEX. PENAL CODE § 9.52, which authorizes the use of deadly force to prevent escape from the jail without regard to whether the person is dangerous. In granting summary judgment for the defendants, the district court held that the evidence supported the conclusion that the force used under the circumstances was necessary to prevent Brothers's escape and was not unconstitutionally unreasonable.

## II.

### A.

Plaintiffs contend that the district court erred in granting summary judgment to defendants on their § 1983 claim. We review a grant of summary judgment de novo. Hanks v. Transcontinental Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

3

material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. Hanks, 953 F.2d at 997.

We begin our determination by consulting the applicable substantive law to determine what facts and issues are material. King v. Chide, 974 F.2d 653, 655-56 (5th Cir. 1992). We then review the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant. Id. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. Celotex, 477 U.S. at 327.

B.

The threshold issue in this case is which constitutional standard for excessive force applies to an individual escaping from custody during transport from one holding cell to another. The plaintiffs argue that the Fourth Amendment governs this case and that the Supreme Court's decision in Tennessee v. Garner, 471 U.S. 1 (1985), compels a judgment in their favor.

In Garner, the Court held that the use of deadly force to prevent a felony suspect's escape was unconstitutional unless the

4

officer had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or others. Id. at 3. The Court held a Tennessee statute unconstitutional to the extent it authorized such use of deadly force. Id. at 11. The suspect in Garner was encountered in the backyard of a house that officers were investigating for a reported burglary. The officer shot the suspect as he attempted to escape over a fence. The officer stated that he was reasonably sure that the suspect was not armed and that he shot him to prevent his escape. Id. at 3-4.

The Court stated that apprehension by the use of deadly force was a seizure subject to the reasonableness requirement of the Fourth Amendment, under which a court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. Id. at 7-8.[2]

This argument would be pursuasive had Brothers been a suspect, but at the time of his attempted escape he was in custody. A pretrial detainee receives the protection of the Due Process Clause

---

[2] We note that Garner cited with approval the Model Penal Code, which treats prison escape attempts differently from the apprehension of suspects. Compare Model Penal Code § 3.07(2)(b) (Proposed Official Draft 1962) ("The use of deadly force [to effect an arrest] is not justifiable . . . unless . . . the actor believes that . . . there is a substantial risk that the person to be arrested will cause death or serious bodily injury if his apprehension is delayed.") with id. § 3.07(3) ("[A] guard or other person authorized to act as a peace officer is justified in using any force, including deadly force, that he believes to be immediately necessary to prevent the escape of a person from a jail, prison, or other institution for the detention of persons charged with or convicted of a crime.") and id. § 3.07 explanatory note ("The public interest in prevention of escape by persons lawfully in the custody of penal institutions is regarded by the provision as sufficient to warrant the use of deadly force where the custodian or guard believes that only such force can prevent the escape.").

of the Fourteenth Amendment. Valencia v. Wiggins, 981 F.2d 1440, 1443-45 (5th Cir.), cert. denied, 113 S. Ct. 2998 (1993). Under Valencia, the appropriate inquiry is "whether the measure taken inflicted unnecessary and wanton pain and suffering" and "`whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.'" Id. at 1446 (citing Hudson v. McMillian, 112 S. Ct. 995, 998 (1992)).

In Graham v. Connor, 490 U.S. 386, 395 n.10 (1989), the Court stated that it "ha[d] not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive force beyond the point at which arrest ends and pretrial detention begins."[3] But Valencia is unambiguous as to when the protection of the Fourth Amendment ends:

> We do not believe that the Fourth Amendment provides an appropriate constitutional basis for protecting against deliberate official uses of force occurring . . . after the incidents of arrest are completed, after the plaintiff has been released from the arresting officer's custody, and after the plaintiff has been in detention awaiting trial for a significant period of time.

Valencia, 981 F.2d at 1443-44.

The court cited three reasons for reaching this conclusion. First, the text of the Fourth Amendment )) prohibiting unreasonable "seizures" )) does not support its application to a post-arrest

---

[3] Plaintiffs contend that the Court reached this issue in Albright v. Oliver, 114 S. Ct. 807 (1994). We find Albright inapposite for two reasons. First, Albright was an individual complaining of an arrest and prosecution without probable cause. That scenario is far different from a pretrial detainee escaping from custody. Second, that portion of Albright that suggests that the Fourth Amendment applies to pretrial deprivations of liberty did not receive the support of a majority of the Justices. See id. at 813. Moreover, as Albright did not raise a Fourth Amendment claim, the discussion of that amendment is plainly dictum. See id.

6

encounter. Second, the Supreme Court has refused to apply the Fourth Amendment to protect inmates after incarceration. And third, Graham and Bell v. Wolfish, 441 U.S. 520 (1979) (refusing to concede that Fourth Amendment applied to pretrial detainee subjected to body cavity search), dictate that the Due Process Clause is the appropriate constitutional basis for pretrial detainee excessive force suits.

Applying the Valencia analysis to the facts of this case, we conclude that Brothers was a pretrial detainee. First, the incidents of arrest were complete. Second, Brothers was released from the arresting officer's custody. And third, Brothers already had been in detention.

Valencia indicates that the Fourth Amendment applies more appropriately to the actual incident of arrest. Although the protection may extend beyond the time of initial apprehension, see 981 F.2d at 1444 n.10, Brothers had been arrested earlier in the day, had been processed by the Jersey Village Police Department, and had spent several hours in jail. He was being transported to the county jail, his hands cuffed and his legs restrained. It is difficult to imagine how Brothers could not be considered a detainee at that point. If the incident had occurred several hours earlier, while Brothers was a resident of the Jersey Village Police Department jail, he surely would have been considered a pretrial detainee. The fact that he was being transported to the Harris County jail does not change his status.

7

Plaintiffs argue that the apprehension of Brothers paralleled the apprehension of the suspect in Garner. According to this logic, however, anytime a detainee escapes, requiring re-apprehension by law enforcement officials, the Fourth Amendment comes back into play because the individual is "seized." See id. at 1444 ("[T]he concept of `seizure' in the Fourth Amendment is not so capacious or elastic as to cover pretrial detention three weeks after the initial arrest . . . .").[4]

We reject this proposition. Once an individual has been arrested and is placed into police custody, and surely after the arresting officer has transferred the individual to a jail cell, the individual becomes a pretrial detainee, protected against excessive force by the Due Process Clause. Until the detainee is permanently released from custody, this status never reverts back to that of mere suspect.[5] Any other conclusion would lead to the anomalous result of pretrial escapees' receiving greater protection than those detainees who peacefully remain in their cells. Thus, the force used against Brothers should be judged under the Due Process Clause. See Bender v. Brumley, 1 F.3d 271 (5th Cir. 1993) (applying Due Process Clause analysis to pretrial detainee taken from his cell the same day as his arrest and allegedly beaten).

---

[4] The Fourth Amendment prohibits unreasonable seizures. Of course, shooting an escapee is a seizure; it stops his forward movement and terminates his freedom. But pretrial detainees lose many individual liberties and do not receive the full protection of the Fourth Amendment.

[5] Of course, the pretrial detainee may eventually become an inmate, receiving the protection of the Eighth Amendment.

8

C.

Plaintiffs contend that even if Brothers was a pretrial detainee under <u>Valencia</u>, various Supreme Court cases dictate that the Fourth Amendment applies to searches and seizures of prisoners and pretrial detainees. In support of this position, plaintiffs rely primarily upon <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979). They argue that this case, presumably applying certain Fourth Amendment protections to prisoners and pretrial detainees, justifies application of the Fourth Amendment to the seizure of an escaping pretrial detainee.

Plaintiffs' reliance upon <u>Wolfish</u> is unavailing. In <u>Wolfish</u>, the Court stated: "[A]ssuming for present purposes that inmates, both convicted prisoners and pretrial detainees, retain some Fourth Amendment rights upon commitment to a correctional facility, we nonetheless conclude that these searches do not violate that Amendment." <u>Wolfish</u>, 441 U.S. at 558 (citations omitted). Thus, the Court refused to concede that the Fourth Amendment applied to such inmates and concluded that no protection would be afforded even if it did apply.[6]

_____

[6] Plaintiffs ignore <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 (1983), in which the Court stated: "[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Moreover, in <u>Whitley v. Albers</u>, 475 U.S. 312 (1985), the Court applied an Eighth Amendment analysis to the claim of an inmate shot by a guard during a prison riot. Thus, we can safely conclude that the Court has imposed significant limitations on the reach of the Fourth Amendment to pretrial detainees.

10

D.

Under the due process standard <u>Valencia</u> applies to pretrial detainees,[7] the prevention of the escape was not unconstitutional. The sheriff's department policy is designed "in a good faith effort to maintain or restore discipline" and not "maliciously and sadistically for the very purpose of causing harm." Brothers had been arrested for auto theft and had previously escaped from custody. The deputies shouted for Brothers to stop and only fired upon him as he ignored their warnings and crawled under the closing door. They acted quickly and decisively.

Furthermore, the county policy allows deadly force only when immediately necessary to prevent escape. It is apparent that the deputies fired at Brothers only as a last resort to prevent the escape. It is also apparent that if they had not fired upon him, Brothers would have escaped. The deputies did not act maliciously or sadistically or in an attempt to inflict punishment, but rather followed a constitutional policy that permits deadly force only to prevent an immediate escape. The plaintiffs failed to adduce summary judgment evidence to the contrary.

## III.

The plaintiffs also assert that the county's failure to train its deputies concerning the constitutional limitations on the use of force amounted to deliberate indifference to constitutional

---

[7] We note that the district court incorrectly applied a Fourth Amendment analysis. Nevertheless, we may affirm summary judgment on grounds different from those stated by the district court. <u>See, e.g.</u>, <u>Louisiana Land & Exploration Co. v. Amoco Prod. Co.</u>, 878 F.2d 852, 854 (5th Cir. 1989).

rights.  The plaintiffs fail to adduce any evidence of this alleged failure or its connection to the prevention of Brothers's escape.

AFFIRMED.

CARL E. STEWART, Circuit Judge, dissenting:

I agree with the majority's conclusion that the threshold issue to be decided in this case is the standard of law that should be applied to examine pretrial excessive force claims, however I disagree with the majority's conclusion that the Due Process Clause and not the Fourth Amendment provides the applicable standard of law. The majority relies on Valencia v. Wiggins, 981 F.2d 1440 (5th Cir. 1993), cert. denied, ___ U.S. ___, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993), to conclude that Brothers was not protected by the Fourth Amendment; however, I do not share my colleagues' confidence that Valencia is dispositive of the instant issue.

In Valencia, this Court held that the Due Process Clause and not the Fourth Amendment provided the applicable legal standard to adjudicate claims of excessive force. Valencia, 981 F.2d at 1445. However, the Valencia court rooted its decision primarily in the fact that the plaintiff had been in custody for three weeks before the disputed incident, id at 1444, a fact not emphasized by the majority opinion in Brothers. Noting that the Supreme Court had been reluctant to extend Fourth Amendment protection beyond the initial arrest, this Court concluded that when a suspect has been in custody for an extended period of time, the Due Process Clause and not the Fourth Amendment provided the applicable constitutional standard to analyze claims of excessive force. Id at 1144-45.[8]

---

[8] As observed in Valencia, other Circuits have concluded that the Fourth Amendment standard applies to various post-arrest, pre-arraignment custodial settings. See Valencia, 981 F.2d at 1444, footnotes 9-12 and the accompanying text.

However, the crucial factor in the Valencia analysis--the extended period of time between the arrest and the challenged use of force--is absent in this case. Thus, Valencia does not apply to the present case where Brothers was killed shortly after his arrest.

In my view, Albright v. Oliver, ___ U.S. ___, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) resolved the doubts expressed in Valencia about extending the protection of the Fourth Amendment beyond the time of arrest. In Albright, the petitioner claimed that his Due Process rights had been violated when the State of Illinois initiated criminal proceedings against him for committing non-criminal acts. The petitioner had surrendered himself when he learned of an outstanding warrant for his arrest, and was conditionally released after posting bond. He deliberately decided to pursue his claim before the U. S. Supreme Court only under the Due Process Clause and did not pursue a possible Fourth Amendment violation. A plurality of the Supreme Court held that his claim was governed exclusively by the Fourth Amendment and that he could not recover for a violation of his substantive Due Process rights. Id at 813. Justice Souter concurred, but did not join, in the plurality opinion, noting that ". . . none of petitioner's alleged injuries has been treated by the Courts of Appeals as beyond the ambit of compensability under the general rule of 42 U.S.C. § 1983 liability for a seizure unlawful under Fourth Amendment standards . . .", Id at 821, and that harms such as those claimed by the petitioner "have naturally coalesced under the Fourth Amendment,

15

since the injuries usually occur only after an arrest or other Fourth Amendment seizure . . .". <u>Id</u> at 822.

In <u>Albright</u>, the petitioner had been "seized" by his arrest and his conditional release after posting bond. Five members of the Court agreed that a Fourth Amendment analysis, and not a Due Process Clause analysis, applied to the petitioner's 42 U.S.C. § 1983 claims. *See the plurality opinion, <u>id</u>, along with the concurrence by Justice Souter, 114 S.Ct. at 819-822.* Thus, the Supreme Court has extended the protection of the Fourth Amendment beyond the time of arrest or the *initial* act of restraining an individual's liberty. I read <u>Albright</u> as pronouncing precisely the scope of Fourth Amendment protection that the majority denies in the instant case. As stated in <u>Albright</u>, <u>id</u>, at 813 (emphasis added),

> The Framers considered the matter of <u>pretrial depriva-tions of liberty</u> and drafted the Fourth Amendment to address it.

This observation provides a greater basis for concluding that the Fourth Amendment is the applicable standard of analysis in this case than <u>Valencia</u> does for concluding that the Fourth Amendment does not apply. The concern expressed in <u>Valencia</u>, regarding whether Fourth Amendment protection extends beyond the *initial* arrest, has been answered by the Supreme Court in the affirmative.

In <u>Tennessee v. Garner</u>, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (emphasis added), the Supreme Court stated that,

> Whenever an officer restrains the freedom of a person to walk away, he has seized that person. <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878 (1975). While it is not always clear just when minimal police interference

16

becomes a seizure, see United States v. Mendenhall, 446 U.S. 544 (1980), *there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.*

Accordingly, the Fourth Amendment is applicable to the instant case.

Garner, id, compels a judgment in Brothers' favor regarding the constitutionality of the Harris County policy. In Garner, pursuant to a statute that allowed the use of deadly force to apprehend all felony suspects, a police officer had shot a burglary suspect as he tried to escape. The Supreme Court determined that the Tennessee statute was unconstitutional as applied to unarmed, nondangerous fleeing suspects because it violated the Fourth Amendment's prohibition against unreasonable searches and seizures. Id at 11. Accordingly, the Court held the Tennessee statue "invalid insofar as it purported to give [the officer] the authority to act as he did". Id at 22. In so holding, the Court stated that:

> [T]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. Id at 11. (emphasis added).

This principle is applicable to the case before us now.

Each of the deputies stated in his deposition that they had no reason to think that Brothers would pose a threat to them or

17

anybody else.[9]  Both deputies also testified that they did not think that he was a danger to the outside community.  Given the uncontradicted testimony that Brothers posed no danger beyond the risk of his escape, the Harris County policy which allowed this use of deadly force is unconstitutional as applied to Brothers because it violated the Fourth Amendment prohibition against an unreasonable seizure.  Under <u>Tennessee v. Garner</u>, <u>supra</u>, this policy can provide no shield from liability for the defendants.

For the foregoing reasons, I respectfully dissent.

---

[9]  The record reflects that one of the officers considered all escapees to be dangerous and therefore considered Brothers to be dangerous because he was an escapee.  When asked whether he had any reason to believe that Brothers was dangerous, he replied "No."