274 So.2d 113 (1973)
The PRUDENTIAL INSURANCE COMPANY OF AMERICA
v.
ESTATE OF Marvin E. RUSSELL.
No. 46987.
Supreme Court of Mississippi.
March 5, 1973.
Wells, Wells, Marble & Hurst, John E. Hughes, III, Erskine W. Wells, Jackson, for appellant.
Billy R. Gibson, Charles W. Cook, Bruce, for appellee.
*114 ROBERTSON, Justice:
Appellant, The Prudential Insurance Company of America, appeals from a judgment of the Circuit Court of Calhoun County (the court sitting without a jury) for $3,896.30, in favor of Mrs. Marvin E. Russell, Administratrix of the Estate of Marvin E. Russell, deceased.
Russell bought a new Chevrolet truck on September 25, 1969, from Cliff Colbert Chevrolet in Grenada. He paid $1,375.00 cash and financed the balance of $3,897.06 through G.M.A.C., to whom Prudential had issued a "credit life" policy of insurance insuring the lives of certain debtors of said General Motors Acceptance Corporation. The policy in question provided that upon receipt of written proof of the death of a debtor insured under the policy, Appellant would pay to G.M.A.C. the balance of the debt remaining to be paid to G.M.A.C. Prudential refused to pay and G.M.A.C. assigned the Russell certificate of insurance to his estate.
The issue is whether or not the certificate of coverage as to Marvin E. Russell was voidable as a matter of law because of a false, material representation made by the decedent in his application for insurance.
In his application for this credit life insurance, Russell signed the following statement:
"I, the Buyer proposed for Life Insurance, understand that the insurance is only available to a buyer who makes the *115 following declarations to induce Prudential to effect such insurance. I do hereby declare that within the past three months (1) I have not consulted or been under the care of a doctor or other practitioner for cancer, and (2) I have not been confined in a hospital or other institution because of any condition of the heart, brain, liver, kidneys or lungs. I hereby authorize any physician or hospital to disclose to Prudential all information concerning my medical history prior to the date of this contract."
 /s/ Marvin Russell
(Emphasis added).
The uncontradicted and undisputed evidence was that prior to Russell's purchase of a new Chevrolet truck on September 25, 1969:
(1) Prior to March 8, 1969, Dr. Guy Farmer of Calhoun City removed a growth from Russell's back, which was diagnosed as a malignant melanoma (cancer).
(2) On March 8, 1969, Dr. Farmer referred Russell to Dr. M.B. Howorth of Oxford, a specialist, who concurred in the diagnosis of malignant melanoma. Russell was advised of this malignancy.
(3) On March 9, 1969, at the Oxford-Lafayette County Hospital, Dr. Howorth performed a radical surgical procedure which involved the removal of a large area around the site of the malignant tissue, together with the lymph glands which drained the area. Russell was discharged from the hospital on March 16, 1969.
(4) After his release from the hospital, Russell consulted Dr. Howorth on March 18, 19, 21, 24, 26, 28 and 31, 1969. Dr. Howorth also examined Russell on April 2, 4, 14 and 28, 1969. Russell again consulted Dr. Howorth on June 6, 1969. Dr. Howorth examined Russell again on September 8, 1969, 17 days before the purchase of the truck and the signing of the application for insurance.
(5) The examination by Dr. Howorth on September 8, 1969, showed that Russell's malignant melanoma had recurred. This recurrence was evidenced by skin tumors immediately adjacent to the area which had been previously excised, together with changes in the chest xray, which indicated that the disease had spread to the lungs.
In his deposition, Dr. Howorth stated that Russell "was given a hint of his status but was not informed fully at this time."
Dr. Howorth explained his usual procedure in dealing with a patient with recurrent cancer in this way:
"When a patient has recurrent malignancy, I don't  or I feel that it is my duty to inform him unless he shows that he doesn't want to be. Not infrequently people will do this. I think it is a means of protecting themselves. So, my usual approach is to assure them once again, as I by then have told them repeatedly that any information they want from me about their health, I will be glad to discuss it with them. I may suggest that things are not quite the same as they had been. Really, what I am trying to do is to see does the patient want to go on and discuss this in detail and specifically. If he doesn't, then I don't push at that time unless I have a special reason for it."
The lower court found that Russell did not positively know on September 25, 1969, that the cancer had recurred and that in his application for insurance his declaration was made in good faith that "within the past three months (1) I have not consulted or been under the care of a doctor or other practitioner for cancer,..." The trial court also found that the application form was prepared by Prudential and that no space was provided for an explanation in the application, and that for these reasons the form and language of the application should be construed more strictly against the insurer.
*116 These two principles of law were not applicable to the facts of this case and the trial court was in error in so applying them.
In Fidelity Mutual Life Insurance Company v. Miazza, 93 Miss. 18, 46 So. 817 (1908), this Court said:
"... If the misstatement is material, it can make no difference as to whether or not it was made in good faith. In the case of Co-operative Association v. Leflore, 53 Miss. 1, 18, the Court says: `The application and the policy, constituting but parts of an entire contract, are to be read as one instrument, and such construction is to be adopted as renders them harmonious. This is accomplished by giving the word "fraud" its legal meaning, by which will be embraced misstatements by which the company has been deceived, though not fraudulently intended by the applicant. To limit it to designed and intentional bad faith is to do violence both to the letter and spirit of the other portions of the instrument.' In this case it can hardly be doubted that, if there had been a full disclosure on the part of Miazza as to the character of his illness in 1903, it might reasonably have influenced the company not to make the contract of insurance.
"The principle here applied to this contract is but a principle of general application. It is the universal rule that any contract induced by misrepresentation or concealment of material facts may be avoided by the party injuriously affected thereby. If the applicant for insurance undertakes to make a positive statement of a fact, if it be material to the risk, such fact must be true. It is not sufficient that he believes it true, but it must be so in fact, or the policy will be avoided, provided, always, that the misstatement be about a material matter. ..." (Emphasis added). 93 Miss. at 39-40, 46 So. at 819.
We followed this line of reasoning in Coffey v. Standard Life Insurance Co. of the South, 238 Miss. 695, 120 So.2d 143 (1960).
Russell was referred to Dr. Howorth for cancer; Howorth operated for cancer; and Russell continued to go to Dr. Howorth for check-ups. He was examined by Dr. Howorth on September 8, 1969 (17 days before Russell signed the insurance application on September 25, 1969) for cancer. The declaration required of Russell was in clear and unambiguous language: "I do hereby declare that within the past three months (1) I have not consulted or been under the care of a doctor or other practitioner for cancer."
There was no need for a space for explanation. Russell had either consulted a doctor within the past three months for cancer or he had not. If he had consulted a doctor he could not truthfully sign this declaration; if he had not consulted a doctor, he could truthfully sign. Russell made a positive statement of a fact material to the risk. It was false and rendered the policy voidable.
The trial court erred in applying the law to the undisputed facts of this case. The judgment is reversed and judgment rendered here for the appellant.
Reversed and rendered.
RODGERS, P.J., and PATTERSON, INZER and WALKER, JJ., concur.