**Myrtle Lee WESLEY, Plaintiff,**

v.

**UNION NATIONAL LIFE, Defendant.**

**Civil Action No. 3:94–cv–641(L)(N).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Oct. 3, 1995.

J. Andrew Phelps, Hattiesburg, MS, for Plaintiff.

William C. Brabec, Arthur F. Jernigan, Jr., Phelps Dunbar, Jackson, MS, for Defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Union National Life (Union National) for summary judgment or, in the alternative, for partial summary judgment. Plaintiff Myrtle Lee Wesley opposes the motion, and the court, having considered the memoranda of the parties, concludes that defendant's motion for summary judgment should be granted.

The undisputed facts of the case are as follows. On May 11, 1992, Thomas F. Wesley took out a whole life insurance policy in which he named his mother, plaintiff Myrtle Lee Wesley, as beneficiary. The policy provided $10,000 death benefits with an additional $10,000 benefits for accidental or unnatural death. Thomas F. Wesley signed the application form. The answers to three questions on the form indicated that he had not been hospitalized in the past five years, that he had not used cocaine or heroin within the past three years and that he had not consulted a physician within the past three years. It is undisputed that all three of these answers were false, and it is also undisputed that Union National would not have provided the same insurance policy at the same premium if the answers on the application had been truthful.

Thomas F. Wesley was shot and killed on June 21, 1992. The coroner's report showed that cocaine was in Mr. Wesley's blood at the time of his death. Upon learning of the circumstances surrounding his death, Union National began to investigate whether Mr. Wesley's answers on the application were truthful. The investigation revealed that within one year prior to his application for insurance, Wesley had been confined to a chemical dependency unit at a hospital in California due to cocaine addiction. As a result, Union National rescinded the policy and returned the premium payments to the beneficiary, Myrtle Lee Wesley. Mrs. Wesley then filed suit for specific performance, bad faith, breach of contract, negligence and conversion. She seeks both actual and punitive damages.

Defendant moves for summary judgment based on its assertion that but for the false statements on Mr. Wesley's application, it would not have issued a life insurance policy to him. In the alternative, defendant argues that partial summary judgment should be granted as to plaintiff's bad faith claims since defendant had a reasonable basis for denying payment of the insurance benefits. Plaintiff has answered the motion for summary judgment by asserting that Union Life would have issued another type of life insurance policy if Thomas Wesley had answered the questions truthfully. She also contends that Union Life engaged in post-claims underwriting in violation of Mississippi law.

Under Mississippi law, an insured party may be barred from recovering the

proceeds of an insurance policy if he makes false statements on the application.

In Mississippi, a material misrepresentation in an application for an insurance policy allows the insurer to void or rescind the policy. *Home Life Ins. Co. v. Madere,* 101 F.2d 292 (5th Cir.1939); *Deposit Guaranty Nat'l Bank v. Minnesota Mutual Life Ins. Co.,* 369 F.Supp. 8 (S.D.Miss.1973); *Coffey v. Standard Life Ins. Co.,* 238 Miss. 695, 120 So.2d 143, 148–49 (1960). The right to void or rescind occurs only where the answers given in the application are both false and material to the acceptance of the risk or the hazard to be assumed. Miss. Code Ann. § 83–9–11(3) (1972). "If the misstatement is material, it can make no difference as to whether or not it was made in good faith." *Fidelity Mutual Life Ins. Co. v. Miazza,* 93 Miss. 18, 46 So. 817, 819 (1908). A misrepresentation is material if knowledge of the true facts would have influenced a prudent insurer in determining whether to accept the risk. 45 C.J.S. 595(3), pp. 406–07. Finally, an insurance company "has the right to rely on the information supplied in the application in determining whether or not to accept the risk." *Mattox v. Western Fidelity Ins. Co.,* 694 F.Supp. 210, 216 (N.D.Miss.1988) (referring to *Apperson v. United States Fidelity and Guaranty Co.,* 318 F.2d 438, 441 (5th Cir.1963)).

*Massachusetts Mutual Life Ins. Co. v. Nicholson,* 775 F.Supp. 954, 959 (N.D.Miss. 1991) (footnote omitted).

■ Mrs. Wesley first argues that the false answers on her son's insurance application were not material to the risks assumed. She submits that his false answers did not affect defendant's evaluation of the risk or hazard assumed. However, the undisputed evidence reveals that Union National would not have issued this policy if plaintiff's insured had answered the questions on the application accurately. Under Mississippi

law, this gives the defendant the right to rescind the policy. Plaintiff's contention that the insured would have been eligible for another type of insurance, even if true, is irrelevant. When an applicant makes material misrepresentations, the law grants an insurance company the right to rescind the policy in whole. It follows that defendant does not have to provide the coverage that would or might have been available if the applicant had answered questions truthfully. The overt misrepresentations of the insured, not the acts of the defendant, denied him the benefits of life insurance altogether.

■ Plaintiff also argues that the false answers on the insurance policy were not material because her son's death was unrelated to his use of cocaine.[1] However, there is no requirement under Mississippi law that the actual cause of death be related to risks concealed by an insurance applicant in order for the concealed facts to be material. *Golden Rule Ins. Co. v. Hopkins,* 788 F.Supp. 295, 303 (S.D.Miss.1991) (each misrepresentation by insured regarding physical conditions unrelated to cause of death constituted "an independent basis for rescission").

The plaintiff does not dispute that her son used cocaine up until at least one year before he took out the life insurance policy with defendant. Defendant presented evidence showing that the insured could not have obtained the same type of insurance policy at the same premium if he had accurately disclosed his prior drug use. This evidence establishes that a prudent insurer would have considered the risk of death posed by an applicant who had used cocaine to be greater than the risk posed by an applicant who had not used cocaine. It is well-documented that cocaine users have a higher risk of death not only from the adverse physical effects of cocaine, but also from violence at the hands of others.[2]

The evidence clearly and convincingly shows that defendant would have acted dif-

1. Plaintiff appears to be arguing that Wesley's death was the result of a gunshot wound and not from adverse physical effects resulting from cocaine use. Plaintiff fails to mention certain circumstances surrounding the shooting that suggest that cocaine was a factor that contributed to the death of Thomas Wesley. For example, tests

conducted soon after his death revealed cocaine in his blood.

2. One study found that on average thirty-one percent of the victims of homicide had traces of cocaine in their blood. The researchers offered an explanation for the increased risks of homicide associated with cocaine use:

ferently if the truth had been disclosed. Therefore, summary judgment is proper since defendant has shown by clear and convincing evidence that the false statements contained in the insurance application materially affected the acceptance of risk or hazard assumed by defendant.

■ Plaintiff also argues that defendant is liable because the company allegedly engaged in post claim underwriting in violation of Mississippi law. The Mississippi Supreme Court has defined post claim underwriting as an insurer's waiting until after the insured makes a claim to determine whether the claimant is eligible for insurance according to the risks he presents. *Lewis v. Equity Nat'l Life Ins. Co.*, 637 So.2d 183, 188–89 (Miss. 1994). The court has criticized this practice, reasoning that "[a]n insurer has an obligation to its insureds to do its underwriting at the time a policy application is made, not after a claim is filed." *Id.* at 188–89. However, defendant did not engage in post-claims underwriting as defined in *Lewis.* The questions on the insurance application were one method for screening out applicants who presented unacceptable risks. Defendant made an underwriting decision not to insure applicants who answered "yes" to any of these questions. In answering three of these questions falsely, the insured bypassed defendant's underwriting process. The remedy provided by Mississippi law is for defendant to have the option to rescind the insurance policy as a whole. Defendant has properly exercised this legal right.

Under Mississippi law, an insurer "has the right to rely on the information supplied in the application in determining whether or not to accept the risk." *Mattox v. Western Fidelity Ins. Co.*, 694 F.Supp. 210, 216 (N.D.Miss.1988) (referring to *Apperson v. United States Fidelity and Guaranty Co.*, 318 F.2d 438, 441 (5th Cir.1963)). Plaintiff

would have this court impose liability on the defendant for accepting the insured's answers on his application as true and for denying coverage when the circumstances surrounding his death and the facts that were revealed by a subsequent investigation showed that he misrepresented facts that would have made him ineligible for the coverage.[3] The court refuses to contravene established Mississippi law as plaintiff suggests.

The court need not address plaintiff's remaining claims since as a matter of law defendant properly rescinded the insurance contract because of the material misrepresentations made by the plaintiff's insured on the application for insurance. The court grants summary judgment to defendant as to all of plaintiff's claims.

SO ORDERED.

---

Homicide victims may have provoked violence through irritability, paranoid thinking, or verbal or physical aggression, which are known to be pharmacologic effects of cocaine. In addition, homicide may have been part of the business of dealing cocaine. Violence is often used for the control of sales territory, in retaliation against dealers who may be using cocaine themselves, or in other violent crimes. "Homicide in New York City: Cocaine Use and Firearms," *The Journal of the American Medical*

*Association,* July 6, 1994; Vol. 272; No. 1; Pg. 43.

**3.** Plaintiff appears to confuse post claim underwriting with post claim investigation of eligibility. To deny defendant the right to engage in post claim investigation would mean that insurers would have to investigate every answer by every applicant before insuring them and to pay claims regardless of the misrepresentations contained in the application.