REVISED - February 26, 1999

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 97-60846
_____


RACHEL B. CARROLL; CYNTHIA B. FASANO
                            Plaintiffs-Counter Defendants-Appellants,

                        versus

METROPOLITAN INSURANCE AND ANNUITY CO
                            Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____

February 15, 1999

Before DAVIS, SMITH, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

     Plaintiffs-Counter Defendants-Appellants, Rachel B. Carroll and Cynthia B. Fasano ("Beneficiaries"), appeal the district court's grant of summary judgment in favor of Defendant-Counter Claimant-Appellee, Metropolitan Insurance and Annuity Co. ("MIAC"). The court denied the Beneficiaries' claims under a $500,000 life insurance policy, reasoning that the insured, Ray T. Bracken, had made material misrepresentations in his application for insurance. The district court concluded that, as a matter of law, (1) Bracken misrepresented his medical condition on his insurance application by omitting prior diagnoses and treatments for skin cancer, (2) MIAC was never put on notice of Bracken's skin cancer history, such that it would be precluded from rescinding the policy on the basis

of Bracken's failure to disclose that history, and (3) the misrepresentation was material to the risk assumed by MIAC, such that MIAC would have either declined to issue the policy or would have issued the policy only at an increased premium. Perceiving the existence of genuine factual disputes surrounding the materiality of the information that Bracken omitted from his application —— specifically, the question whether MIAC, with full knowledge of Bracken's skin cancer history, would have issued the policy without increasing the premium —— we reverse the district court's grant of summary judgment and remand the case for trial.

## I.

### FACTS AND PROCEEDINGS

Early in 1993, Bracken contacted an insurance agent-broker to assist him in securing life insurance coverage. As Bracken had an extensive history of medical problems, including a young-age heart attack, quadruple bypass surgery, hypertension, renal failure, and gout, he had difficulty obtaining coverage. Bracken's insurance agent contacted Leibovitz Associates, Inc., a company that specializes in locating carriers for substandard cases such as Bracken's. Through Leibovitz, Bracken sent inquiries to several potential insurance carriers, one of which —— MIAC —— responded, inviting him to submit a formal application for insurance. Toward that end, Bracken met with the insurance agent who reviewed with Bracken the questions posed on MIAC's application form and recorded Bracken's responses. The following questions and answers appeared on Bracken's application:

2

<u>Part A, Section II, Question 29(c)</u>

Have you received treatment, attention, or advice from any physician, practitioner or health facility for, or had any known indication of: (c) cancer, tumor or polyp?
  Answer: No.

<u>Part A, Section II, Question 29(g)</u>

Have you received treatment, attention, or advice from any physician, practitioner or health facility for, or had any known indication of: (g) any other impairment of health, hospitalization, surgery, x-ray, EKG or special tests within the past 5 years, or contemplated in the future?
  Answer: No.

<u>Part A, Section II, Question 30</u>

In the last 5 years, have you ever been treated, examined, or advised by any physician, licensed practitioner, or health facility? (Do not include colds, minor viruses or injuries which prevented normal activities for less than 5 days).
  Answer: No.

At the end of the application, Bracken signed an attestation that all answers were true and complete to the best of his knowledge. The application was then sent to MIAC.

On receipt of the application, MIAC sought to obtain medical records from physicians identified in the application. The medical records of Charles McCollum, M.D., Bracken's personal physician for over twenty years, reflected — among other things — that Bracken had no abnormality of the skin. In a written report in January of 1993, Dr. McCollum had indicated that he was aware of nothing concerning Bracken's health "which might unfavorably affect [his] insurability."

MIAC required Bracken to be examined by Arthur Jones, M.D., a physician retained by MIAC. The results of this examination

disclosed a skin abnormality known as keratosis,[1] but gave no indication that Bracken had ever been positively diagnosed with skin cancer.[2] Finally, MIAC obtained a report from Equifax, Inc., an independent reporting company that gathers medical information on prospective insureds, which report contained no additional facts.

Based on the answers contained in Bracken's application, in the subsequent physical examination, and in the medical records check that it conducted, MIAC issued Bracken a $500,000 policy at an annual premium of $16,000. Following his death by heart attack not quite two years later, MIAC performed a post-claim investigation of Bracken's medical history, which revealed that Bracken had an extensive history of skin cancer prior to applying for MIAC coverage.[3] MIAC learned that Bracken had been diagnosed and treated for basal cell and squamous cell carcinomas during

---

[1]According to the opinions of both the Beneficiaries and MIAC's experts, keratosis is a premalignant, superficial lesion on the skin that is common in older persons.

[2]During the medical examination, Bracken was required to answer additional questions concerning his medical history, some of which mirrored the questions on the written application. Bracken was asked if he ever received treatment, attention, or advice for cancer, tumor, or polyp, to which he responded no. He was also asked if he had ever undergone a surgical operation that he did not reveal in the written application, or visited a hospital, clinic, dispensary or sanatorium for observation, examination, or treatment that he did not reveal in the written application, to which he responded yes. In the "provide details" section below, Bracken only mentioned a repaired hernia in 1985. Bracken again signed an attestation statement.

[3]Had Bracken died more than 2 years after the policy was issued, it would have been incontestable, and this litigation probably would not have occurred.

1991, 1992, and 1993, during which time approximately eleven biopsies had been performed.  In fact, MIAC learned that in May of 1993, one month before Bracken applied to MIAC for coverage, a biopsy had been performed by William Burrow, M.D., Bracken's dermatologist, which revealed an invasive squamous cell carcinoma. Armed with this information, MIAC denied the Beneficiaries' claim for payment under the policy and rescinded the policy, maintaining that in his application, Bracken had made material misrepresentations regarding his several diagnoses of and treatments for  skin cancers.

The Beneficiaries brought suit seeking $500,000 in compensatory damages and $10,000,000 in punitive damages for MIAC's alleged bad faith failure to pay them the policy benefits.  MIAC responded by filing a counterclaim for rescission of the policy and interpleading all premiums that Bracken had paid on the policy. MIAC then filed a motion for summary judgment, advancing that, as a matter of law, Bracken had made misrepresentations on his application for life insurance that were material to the risk assumed by MIAC in underwriting his policy.  The district court granted the motion, finding that no genuine issue of material fact existed to sustain the Beneficiaries' claims and dismissing their suit with prejudice.  The Beneficiaries timely filed this appeal.

On appeal, the Beneficiaries submit that the district court erred when it decided conflicting factual questions and drew inferences in favor of the moving party, MIAC, urging that such error mandates reversal of the summary judgment.  Specifically, the

Beneficiaries contend that there are genuine factual disputes as to (1) whether Bracken misrepresented his medical history on his life insurance application, (2) whether, even if Bracken misrepresented his condition on the application, MIAC had notice of Bracken's skin cancer, and (3) whether Bracken's undisclosed history of skin cancer was material, i.e. whether MIAC would have denied Bracken insurance, or issued it only for an increased premium if that history had been disclosed on the application. When we view the Beneficiaries' position in the light most favorable to them, we discern summary judgment evidence supporting their position that Bracken's undisclosed history of skin cancer was immaterial to the risk assumed by MIAC in underwriting the policy sufficient to establish the existence of a genuine dispute of material fact. We hold, therefore, that summary judgment was inappropriate.[4]

## II.

### ANALYSIS

A.   Standard of Review

We review a grant of summary judgment de novo, applying the same standard as the district court.[5] In examining the record, we

---

[4]We recognize that the Beneficiaries have presented evidence both to refute MIAC's claim that Bracken misrepresented his medical history on the application and to demonstrate that MIAC had notice of Bracken's condition. As we conclude that there are genuine issues of fact surrounding the materiality of Bracken's undisclosed condition sufficient to send the entire case to a finder of fact, we do not express any opinion on the merits of the issues of misrepresentation and notice.

[5]Odom v. Frank, 3 F.3d 839, 843 (5th Cir. 1993); Southern Pacific Transp. Co. v. Chabert, 973 F.2d 441, 444 (5th Cir. 1992), cert. denied, 507 U.S. 987 (1993).

resolve all reasonable doubts and draw all reasonable inferences in favor of the non-moving party, the Beneficiaries in this case.[6] If we conclude that they have presented specific, probative facts in support of allegations essential to their claim, a genuine issue of material fact exists and summary judgment is not appropriate.[7] Neither we nor the district court should weigh the evidence or make credibility determinations when evaluating depositions, affidavits, or other summary judgment evidence.[8]

B.   Applicable Law

Under Mississippi law, if an applicant for insurance is found to have made a misstatement of material fact in the application, the insurer that issued a policy based on the false application is entitled to void or rescind the policy.[9] To establish that, as a matter of law, a material misrepresentation has been made in an insurance application, (1) it must contain answers that are false, incomplete, or misleading, and (2) the false, incomplete, or

---

[6]FED. R. CIV. P. 56(c); Brothers v. Klevenhagen, 28 F.3d 452, 455 (5th Cir.), cert. denied, 513 U.S. 1045 (1994); FDIC v. Hamilton, 939 F.2d 1225, 1227 (5th Cir. 1991).

[7]Brothers, 28 F.3d at 455; Suggs v. Pan American Life Ins. Co., 847 F. Supp. 1324, 1329 (S.D. Miss. 1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

[8]Richardson v. Oldham, 12 F.3d 1373, 1379 (5th Cir. 1994); Berry v. Armstrong Rubber Co., 989 F.2d 822, 824 (5th Cir. 1993), cert. denied, 510 U.S. 1117 (1994).

[9]Prudential Ins. Co. v. Russell, 274 So. 2d 113, 116 (Miss. 1973); Coffey v. Standard Life Ins. Co., 120 So. 2d 143, 149 (Miss. 1960); Wesley v. Union Nat'l Life, 919 F. Supp. 232, 234 (S.D. Miss. 1995); Pedersen v. Chrysler Life Ins. Co., 677 F. Supp. 472, 474 (N.D. Miss. 1988); Dukes v. South Carolina Ins. Co., 590 F. Supp. 1166, 1168-69 (S.D. Miss. 1984), aff'd, 770 F.2d 545 (5th Cir. 1985).

misleading answers must be material to the risk insured against or contemplated by the policy.[10]  The party seeking to void the insurance contract —— here, MIAC —— must establish the existence of a factual misrepresentation and its materiality <u>by clear and convincing evidence</u>.[11]  Whether the misrepresentation was intentional, negligent, or the result of mistake or oversight is of no consequence.[12]

A misrepresentation in an insurance application is material if knowledge of the true facts would have influenced a prudent insurer in determining whether to accept the risk.[13]  Stated differently, a fact is material if it might have led a prudent insurer to decline the risk, accept the risk only for an increased premium, or otherwise refuse to issue the exact policy requested by the applicant.[14]  In making these kinds of underwriting decisions, insurers have the right to rely on the information supplied in the application.[15]  Even if a misrepresentation exists, however, an

---

[10]MISS. CODE ANN. § 83-9-11(3) (1998); <u>Prudential</u>, 274 So. 2d at 116.

[11]<u>Pederson</u>, 677 F. Supp. at 474.

[12]<u>Prudential</u>, 274 So. 2d at 116; <u>see also</u> <u>Pederson</u>, 677 F. Supp. at 475 (noting that an insurer is not required to show the insured's intent to deceive in order to void a policy based on misrepresentations); <u>Dukes</u>, 590 F. Supp. at 1168-70 (noting that it is irrelevant that the insured does not know of the falsity of his statements in the application).

[13]<u>Massachusetts Mut. Life Ins. Co. v. Nicholson</u>, 775 F. Supp. 954, 959 (N.D. Miss. 1991).

[14]<u>Nicholson</u>, 775 F. Supp. at 959.

[15]<u>Id.</u>; <u>Mattox v. Western Fidelity Ins. Co.</u>, 694 F. Supp. 210, 216 (N.D. Miss. 1988).

insurance company cannot rely on it to rescind the policy if facts were known that would cause a prudent insurer "to start an inquiry, which, if carried out with reasonable thoroughness, would reveal the truth."[16]

C.  Materiality

The Beneficiaries argue that, assuming without admitting that Bracken did misrepresent his medical history on the application, such a misrepresentation was not material to the risk assumed by MIAC.  The Beneficiaries insist that in light of Bracken's numerous and significantly more severe medical ailments that were disclosed — heart attack, bypass surgery, aneurysm, hypertension, renal failure, and gout — the presence of non-melanoma skin cancer would not have affected either his insurability vel non or the premium MIAC charged for the policy.  In other words, because MIAC was willing to underwrite Bracken with full knowledge of his serious, life-threatening medical conditions, contend the Beneficiaries, MIAC would not have declined the application or required a greater premium on the basis of his history of non-life-threatening skin cancers, each of which had been completely removed without reoccurrence or metastasis as of the times of Bracken's application and MIAC's issuance of the policy.

The district court agreed that a genuine factual dispute may exist as to whether MIAC would have declined to cover Bracken had it known of his skin cancer history, but the court ultimately deemed this dispute inconsequential.  Instead, it  stated that

---

[16]Nicholson, 775 F. Supp. at 959 n.13.

"there is significant <u>unrefuted</u> evidence that even had MIAC issued the policy, it would have <u>charged a higher premium</u> for the coverage had it known of this aspect [skin cancer] of Bracken's medical history."[17]  It is this purportedly undisputed "finding" — that MIAC would have increased Bracken's premium had it known of his prior treatment for skin cancer — with which we disagree.

The Beneficiaries presented probative, summary judgment evidence of contrary facts to demonstrate that MIAC, even with full knowledge of Bracken's history of skin cancer, might well have issued the policy without increasing the premium.  According to MIAC's Underwriting Guide, applicants who have been diagnosed with "malignant neoplasms" (such as the non-melanoma basal cell and squamous cell carcinomas removed from Bracken), which do not exceed 2 centimeters and which have not metastasized, receive a medical rating of "+0" — a <u>rating</u> that produces <u>no additional premium</u>. The Underwriting Guide specifies, however, that if the non-melanoma skin cancer exceeds 2 centimeters, the application must be denied or assigned an extra premium of $7.50 per $1000 of insurance for a four year period if the tumor had been present "0 to 1 year ago."

In support of its motion for summary judgment, MIAC produced the pathology report of Billy Walker, M.D., Bracken's dermapathologist, who tested a tissue specimen from Bracken measuring "5.6 cm in length and 1.8 cm in greatest width" less than one year before Bracken's application.  MIAC contends that, based on the size of this <u>tissue specimen</u> (not, we note, the size of the

---

[17]Emphasis added.

lesion), Bracken's policy, if not declined outright, would have incurred an increased premium of $3500 for each of the first four years of the policy. MIAC substantiated its position with the testimony of Charles Jones, M.D., MIAC's Vice President of Medical Services, and George McCarthy, the underwriter on Bracken's application, both of whom maintained that if Bracken had disclosed his prior skin cancers during the underwriting process, the company would have, at the very least, postponed issuance of the policy until Bracken provided proof that he was cured. As this proof would never have been forthcoming because Bracken's cancer had metastasized into his lymph nodes by September of 1993, claims MIAC, coverage would have been declined.[18]

The Beneficiaries, however, presented particularized, probative evidence to the contrary — evidence that apparently was disregarded by the district court — which we conclude raises a genuine issue of fact. Our conclusion is bolstered by the knowledge that MIAC, not the Beneficiaries, must meet the heightened clear and convincing burden of proof. First, the Beneficiaries presented the affidavit of Bracken's dermatologist,

---

[18]Bracken's application for insurance was underwritten by MIAC in June and July of 1993 and was ultimately issued in August of 1993. Bracken was diagnosed with cancer in his lymph nodes on September 27, 1993, after the physical examination and medical checks had been completed. Both parties dispute whether the presence of cancer contributed to Bracken's death. These arguments, however, do not affect the materiality issue because "there is no requirement under Mississippi law that the actual cause of death be related to risks concealed by an insurance applicant in order for the concealed facts to be material." Wesley, 919 F. Supp. at 234 (citing Golden Rule Ins. Co. v. Hopkins, 788 F. Supp. 295, 303 (S.D. Miss. 1991)).

Dr. Burrow, who stated that he had never removed a <u>lesion</u> larger than 2 centimeters from Bracken's skin. According to this testimony and the unambiguous language in the Underwriting Guide, Bracken clearly would not have received an increase in premium based on the smaller size tumor.[19] To buttress their position, the Beneficiaries point out that even though Dr. Walker's pathology report indicated that he had tested a <u>tissue specimen</u> in excess of 5 centimeters, he clarified this point in later testimony to the effect that the size of the specimen "should not be interpreted to mean the tumor was that size inasmuch as physicians often remove a great deal more tissue than tumor to make certain the entire tumor is removed, and for cosmetic purposes." At the summary judgment stage, neither we nor the district court can reconcile the differences between Dr. Walker's pathology report and Dr. Burrow's testimony, or ascertain whether the size of the tumor was greater than 5 centimeters or less than 2 centimeters. And, this determination is critical when calculating a premium increase, if any, in Bracken's policy. We therefore conclude that this

---

[19]This conclusion was confirmed by the Beneficiaries' expert underwriter, Waldemar Luehlfing, who ventured that "MetLife would not have increased Mr. Bracken's premium or changed his rating according to MetLife's Medical Underwriting Guide." The district court disregarded Luehlfing's affidavit because it believed his testimony was contrary to his opinion made in deposition. Luehlfing, however, stated in his deposition that he had been unaware of MIAC's underwriting guidelines at that time and thus was unable to make a determination of an applicant's premium; but that he was able to express his opinion in the affidavit after being aware of those guidelines. We do not perceive these statements as being inconsistent or self-contradictory and therefore consider the affidavit to be probative evidence at the summary judgment stage of these proceedings.

conflicting —— or at least ambiguous —— testimony raises issues of material fact, which must be resolved by a trier of fact, as to the actual size of the tumor and the resulting effect that this would have had on Bracken's premium.

The Beneficiaries have also highlighted the testimony of MIAC's Vice President of Medical Services and designated corporate representative, Dr. Jones, who stated that MIAC would assess "no rating" —— and therefore no premium increase —— because of squamous cell or basal cell carcinomas that are removed without complications and result in the patient's being "cured" of that particular skin cancer. He further indicated in a letter to a claims reference advisor that because Bracken was not advised to seek additional medical attention after his skin lesions were removed, Bracken justifiably presumed that he was cured.[20] These statements, claim the Beneficiaries, are in direct contradiction to the size requirements in the Underwriting Guide and indicate that, notwithstanding the words of the guidelines, MIAC does not automatically increase premiums for non-life-threatening, cured skin cancers. The Beneficiaries note that had MIAC contacted Dr. Burrow between June and August of 1993, when Bracken's application was submitted, considered, and ultimately accepted, he would have confirmed that Bracken's last lesion was removed without complications, and that he considered Bracken cured of that cancer. This, the Beneficiaries submit, would have provided the proof

_____

[20]Bracken's lack of intentional deceit is not a defense, however. See supra n. 12 and accompanying text.

**13**

necessary to proceed with policy issuance. Accordingly, MIAC might well have proceeded to issue the policy without any premium adjustment.

Despite Dr. Jones's credentials and his designation <u>by MIAC</u> as its corporate witness, the district court discounted his testimony. The court reasoned that Dr. Jones was not necessarily familiar with all of the factors considered in the underwriting process and, when he stated that Bracken believed he was cured, made legal conclusions that the witness was never qualified to make. We disagree. At a minimum, this testimony ellicits the presence of arguable factual contradictions that must be resolved by a fact finder, an exercise proscribed at the summary judgment stage of the case. Dr. Jones was designated by MIAC as its corporate representative to give deposition testimony concerning underwriting issues. Even though this was summary judgment evidence, which is not to be weighed or tested for credibility, the district court proceeded to trivialize Dr. Jones's comprehension of the underwriting process, which MIAC had designated him to present. If the weight of the testimony of such a witness is to be discounted, though, it must be done by a finder of fact in a full-blown trial.

## III.

### CONCLUSION

The Beneficiaries have adduced specific, probative facts to support their side of the argument whether knowledge of Bracken's history of non-melanoma skin cancer was material to the risk MIAC assumed when it chose to issue Bracken insurance without further

**14**

premium increase.  For example, the actual sizes of the tumors removed from Bracken's skin are not only unclear, but one of MIAC's own representatives has stated —— on more than one occasion —— that if the lesion in fact had been removed without complications, Bracken's policy would have been approved and issued as it was, and for the same premium.  As our summary judgment practice mandates, neither we nor the district court should purport to resolve disputes of this nature at this stage of the litigation; findings involving material facts genuinely in dispute are reserved to the finder of fact, whether judge or jury, at the trial stage of such proceedings.  Accordingly, we reverse the district court's grant of summary judgment in favor of MIAC and remand for trial.

REVERSED and REMANDED.