# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 6, 2023

Lyle W. Cayce
Clerk

No. 21-60907

DeMarkus Bradley, individually and on behalf of all others similarly situated; Angela Hawkins,

*Plaintiffs—Appellants/Cross-Appellees*,

*versus*

Viking Insurance Company of Wisconsin,

*Defendant—Appellee/Cross-Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:20-CV-640

Before Jones, Southwick, and Ho, *Circuit Judges*.[1]

Leslie H. Southwick, *Circuit Judge*.

Two significant questions of Mississippi insurance law are posed in this appeal of a denial of coverage for an automobile accident. One is whether

---

[1] Judge Ho would certify the questions presented in this appeal to the Mississippi Supreme Court. *See, e.g., JCB, Inc. v. The Horsburgh & Scott Co.*, 941 F.3d 144, 145 (5th Cir. 2019).

No. 21-60907

uninsured motorist coverage can be denied simply because the driver, who was the son of the insured, was not listed on the policy? We answer that question "no." The other is whether the policy can be voided because the insured committed a material misrepresentation by failing in her application for insurance to name, as required, those of driving age who lived in her household? We answer that question "yes" and AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2016, Angela Hawkins, DeMarkus Bradley's mother, applied for an automobile insurance policy with Viking Insurance. The application required that certain other potential drivers be named:

> I understand that I must report to the Company all persons of legal driving age or older who live with me temporarily or permanently, including all children at college. I understand that I must report all persons who are regular operators of any vehicle to be insured, regardless of where they reside.

The policy relevantly defined "regular operator" as a person old enough to drive who resides in the insured's home.

The application emphasized the importance of accuracy. One place it did so was to declare that Viking relied on the answers:

> We [Viking] rely upon you to provide us with accurate information. This policy, your application (which is made a part of this policy as if attached), and your Declarations Page include all the agreements between you and us relating to this insurance. If you have made any misrepresentations in your application or when subsequently asked, this policy may not provide any coverage.

Further, the policy defined "misrepresentation" relatively broadly as

> providing information to us that is known by you to be false, misleading or fraudulent. This could be presented to us during

2

No. 21-60907

> the application for coverage, or during the policy period. It must affect either the eligibility for coverage and/or the premium that is charged. Concealing information relevant to the application, or maintenance of coverage, is also misrepresentation.

Finally, the policy stipulated that "[i]f you misrepresent any fact or condition that affects whether a risk is eligible or contributes to a loss, we reserve the right to rescind the policy and/or deny coverage."

At the time of Hawkins' March 2016 insurance application, Bradley lived with Hawkins, was a resident of her household, and was of legal driving age.[2] Thus, Bradley was a regular operator of the Hawkins vehicles. Hawkins, though, failed to disclose Bradley on her insurance application as a regular operator. For policy renewals between March 2016 and the accident in April 2018, Hawkins never added Bradley to her policy.

In April 2018, Bradley was operating Hawkins' vehicle when he was struck by an uninsured motorist. After the accident, Bradley submitted a claim for uninsured motorist (UM) insurance. Hawkins' policy contained UM coverage[3] and stated that Viking

> will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by a car accident and result from the ownership, upkeep or use of an uninsured motor vehicle.

---

[2] There is record evidence that DeMarkus Bradley was born in about 1994, and so would have been around 22 years old in 2016.

[3] Hawkins rejected UM coverage for her initial Viking policy, issued in 2016. By the time of her 2018 renewal, which is the operative policy for the accident underlying this litigation, she had UM insurance.

No. 21-60907

An "insured person" under the Policy includes "a relative" of the named insured and "any other person occupying [the] insured car with the permission of" the named insured. Bradley therefore qualified as an insured person. However, the policy stated that UM coverage was unavailable when an unlisted regular driver is operating the vehicle:

> This [UM] coverage does not apply to bodily injury sustained by an insured person described by any of the following.
>
> . . .
>
> (8) While your insured car is being operated by a regular operator who was not reported to us. The regular operator must be reported on the original application for insurance or otherwise disclosed to us and listed on your Declarations Page before the car accident.

Viking denied Bradley's claim because it found that Bradley was a regular operator of Hawkins' vehicle but had not been disclosed. Hawkins admitted that Bradley was a driver living in her household who had not been disclosed. Viking subsequently force-placed Bradley on the policy.

In October 2020, Bradley and Hawkins sued Viking, seeking damages for a wrongful denial of benefits. Bradley and Hawkins asserted that excluding drivers not listed on the policy violated Mississippi's statutorily prescribed UM coverage requirements.

After discovery, both parties moved for summary judgment. The district court concluded that Viking's unnamed driver exclusion was without effect. *Bradley v. Viking Ins. Co. of Wis.*, 570 F. Supp. 3d 389, 394 (S.D. Miss. 2021). Bradley, "as a resident member of Hawkins' household and as a person operating the vehicle with her permission, was an 'insured' for UM purposes and was not excluded from coverage by" the policy's unnamed driver exclusion. *Id.*

Nonetheless, the district court denied coverage because Hawkins had failed to disclose in her initial application or in any renewal that Bradley was a regular operator of the insured vehicle. *Id.* at 399. Those failures constituted misrepresentations. *Id.* at 396. Under the policy, Viking could deny coverage if the insured "misrepresent[s] any fact or condition that affects whether a risk is eligible or contributes to a loss" and defined "misrepresentation" as information that is "known by you to be false . . . [and] affect[s] either the eligibility for coverage and/or the premium that is charged." *Id.* at 397 (quotation marks omitted). Hawkins' misrepresentation, the court found, affected the premium charged, and Viking therefore had the right to deny Bradley's UM claim. *Id.* The court granted Viking's motion for summary judgment. *Id.* Both parties appealed.

## DISCUSSION

We review the grant of summary judgment *de novo*. *Nationwide Mut. Ins. Co. v. Baptist*, 762 F.3d 447, 449 (5th Cir. 2014). "When, as here, cross-motions for summary judgment have been ruled upon," this court examines "each party's motion independently." *Balfour Beatty Constr. L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 509 (5th Cir. 2020) (quotation marks and citation omitted). Summary judgment is proper when "there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). In reviewing the record, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

We address two issues. The first is the subject of Viking's cross-appeal — does its unnamed driver exclusion violate public policy? The second is appellants' issue — did Viking properly deny coverage based on misrepresentation?

## I.    Unnamed driver exclusion

Mississippi's UM statutes are set forth in Mississippi Code Sections 83-11-101 through 83-11-111.  Section 83-11-101 requires that all automobile insurance policies provide an "insured" with coverage of damages caused by "the owner or operator of an uninsured motor vehicle," unless a form rejecting all UM coverage is signed by the insured.  Miss. Code Ann. §§ 83-11-101(1), (2), (4).[4]  "Insured," for purposes of UM coverage, includes

> the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, and a guest in such motor vehicle to which the policy applies, or the personal representative of any of the above.

*Id.* § 83-11-103(b).   It is undisputed that Bradley, as a resident relative of Hawkins, is an "insured" under this provision.  Our initial question is whether an insurer can limit this mandatory UM coverage through policy language.  Viking on cross-appeal insists that it can.

The Mississippi Supreme Court has not decided whether unnamed driver exclusions violate the state's statutory UM scheme.  It has addressed other exclusions, though.  Most helpful is an opinion from that court addressing a "named driver exclusion" in a policy which precluded coverage if the insured's husband were driving her car. *Atlanta Cas. Co. v. Payne*, 603 So. 2d 343, 344–45 (Miss. 1992).  There, the husband of the insured was driving when the vehicle collided with an uninsured motorist; the insurer

---

[4] An insured has the right to reject all UM coverage by executing a form approved by the state Department of Insurance.  Miss. Code Ann. § 83-11-101(4).  This appeal concerns whether a limited rejection can be imposed through a policy provision.

denied benefits. *Id.* The court stated that Mississippi's UM statute "*commands* that the injured party shall be able to recover from the UM carrier 'all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle.'" *Id.* at 346 (quoting § 83-11-101). It summarized that "the overwhelming number of [UM exclusions] that this Court has considered have been found to be void and against public policy," and the named driver exclusion was no exception. *Id.* at 347.

Since the Mississippi Supreme Court voids policy language that excludes a specific individual from UM coverage, we have little doubt it would void a more expansive unnamed driver exclusion. Yet, Viking spots other language in *Payne* that, to its eyes, dictates the opposite conclusion. The language appears after the *Payne* court held that named driver exclusions are void, when it stated that "in order to limit uninsured motorist coverage, 'it must be done in clear and unambiguous language.'" *Id.* at 348 (quoting *Hartford Accident & Indem. Co. v. Bridges*, 350 So. 2d 1379, 1381 (Miss. 1977)). The court continued by holding that "the burden of proof [is] on the insurer to show that such an exclusion or any other quasi-rejection of uninsured motorist insurance was a knowing and informed decision." *Id.*

We find that were we to interpret this odd section of *Payne* to mean that a partial exclusion of UM coverage will be valid so long as the policy provision is clear and adequately disclosed, the opinion's earlier holding as to the named-driver exclusion would be eviscerated. Either the inconsistency of the two sections was not recognized by the *Payne* court or their consistency has been missed by this one. A federal district court attempted to explain *Payne* by relying on the fact that the statement in *Payne* about limiting coverage with unambiguous language was a quote from a precedent that addressed "stacking" of UM coverages. *Godwin v. United States*, 2016 WL 6127405, No. 3:14-CV-00391, at *3 (S.D. Miss. Oct. 19, 2016) (discussing

No. 21-60907

*Bridges*, 350 So. 2d at 1381). As the *Bridges* court put it, "[t]he question of law is whether uninsured motorists coverage on three separate automobiles in one policy of insurance can be aggregated or stacked." *Bridges*, 350 So. 2d at 1380. Thus, *Godwin*'s suggested meaning for *Payne* is that, as in *Bridges*, the minimum UM coverage must be provided, but clear policy language can block aggregating minimum coverage by stacking. *Godwin*, 2016 WL 6127405, at *3. Perhaps, but prohibiting the multiplication of UM coverage if clear policy language is used is different than allowing an unambiguous named-driver exclusion to carve out an exception to minimum UM coverage. Of course, the *Godwin* court likely was not satisfied with its effort to explain, either.

An excellent treatise on Mississippi insurance law does not suggest *Payne* modified the requirement to provide minimum UM coverage:

> The UM statute sets the minimum requirements for UM coverage. An insurer may provide more coverage, but not less, than that mandated by the statute. On the other hand, for coverage beyond what is required by the statute — so-called excess coverage — the parties to the insurance contract may freely agree to restrictions as they see fit (or, more realistically, as the insurer will impose).

JEFFREY JACKSON AND D. JASON CHILDRESS, MISSISSIPPI INSURANCE LAW AND PRACTICE § 18:6 (2022). *Payne* is cited as one of the examples of decisions striking policy provisions as unenforceable because they deny minimum UM coverage. *Id.* at n.8.

We conclude, notwithstanding *Payne*'s reference to unambiguous policy language, that Mississippi law requires the following: if UM coverage is not rejected completely by the insured, the policy may provide more coverage, but not less, than the statutory minimum. Therefore, whatever

the confusing language from *Payne* means, it does not allow an unnamed driver exclusion to eliminate the mandatory UM coverage set by statute.

## II.    *Misrepresentation*

The second issue is whether Viking properly denied UM coverage based on misrepresentation. The district court stated that "coverage is defeated by Hawkins' failure to disclose in the application for coverage, or at any other time prior to the accident, that she was not the only member of her household of driving age and/or who had regular access to the insured vehicle(s)." *Bradley*, 570 F. Supp. 3d at 394. The court referred to policy language that Viking had the right to "deny coverage if the insured 'made any misrepresentations in your application or when subsequently asked,' and it defines misrepresentation as providing knowingly false information." *Id.* at 396. The court wrote that "it is undisputed that [Hawkins] knew she had failed to provide required information" when she did not report to Viking all persons of driving age who lived with her. *Id.*

The plaintiffs' brief on appeal insists the district court erred by allowing Viking's common law right to void an insurance policy due to material misrepresentations to defy "the UM Act that mandates all automobile liability insurance policies contain uninsured motorist coverage unless the coverage is rejected in writing." The plaintiffs argue that because Bradley is an "insured" under the UM statute, Hawkins' policy could not diminish his coverage.

On this issue, we have guidance from a Mississippi precedent addressing required liability coverage. *See Safeway Ins. Co. v. Dukes*, 185 So. 3d 977 (Miss. 2015). There, Tiffany Dukes applied for insurance with Safeway Insurance and completed an application that required her to disclose all "regular, frequent" drivers of her vehicle. *Id.* at 978. Robert Hudson, not disclosed on Dukes's policy, was driving Dukes's car when he injured a child.

No. 21-60907

*Id.* Safeway denied the claim, concluding that the policy was voidable due to the failure to list Hudson as a regular, frequent driver on her application. *Id.* In an action between the injured child and Hudson, Safeway moved for summary judgment, arguing that Dukes's policy was void because she made a false representation on her application. *Id.* The trial court disagreed that the policy was void, concluding that the insurer was arguing for an exclusion from the minimum liability (not UM) coverage required by state statute. *Id.* at 979; *see* Miss. Code Ann. § 63-15-4.

On appeal, the Mississippi Supreme Court saw the question differently. "[W]hether the terms of [Dukes's] policy with Safeway covered the accident" under Mississippi's statutory insurance scheme and "whether the policy, itself, was voidable" because of a false warranty, were two separate issues. *Id.* at 981 (quoting *Jones–Smith v. Safeway Ins. Co.*, 174 So. 3d 240, 242 (Miss. 2015)) (emphasis omitted). "[T]he question is whether the policy itself is voidable, not whether the terms of the policy covered the accident." *Id.* at 981. Because "Dukes's statement warranting that there were no other regular, frequent drivers is not literally true," her policy was voidable and Safeway could properly deny coverage. *Id.* at 981.

As in *Safeway*, Viking is not seeking to enforce an "invalid exclusion within a valid insurance policy." *Id.* (quoting *Jones–Smith*, 174 So. 3d at 242) (emphasis omitted). Instead, it argues coverage can be denied based on misrepresentation. Though *Safeway* involved liability and not UM coverage, we conclude the same reasoning applies here. Under *Safeway*'s logic, the validity of an unnamed driver exclusion does not have any bearing on whether Viking has the right to void its policy based on misrepresentation.

Before we consider how to apply *Safeway*, we address a distinction. The Safeway Insurance Company applications in the two cited cases each had language of warranty: "Applicant warrants that all regular, frequent

10

drivers" are listed. *Id.* at 978. The Mississippi Supreme Court stated that because the statement on the application that there were no other drivers was "a warranty and not a misrepresentation, the materiality of Dukes's failure to disclose Hudson is not an issue." *Id.* at 981 n.3. When, as here, there is no warranty in an application, "[t]he materiality of a representation is determined by the probable and reasonable effect which truthful answers would have had on the insurer." *Jones–Smith*, 174 So. 3d at 245 (quoting *Sanford v. Federated Guar. Ins. Co.*, 522 So. 2d 214, 217 (Miss. 1988)).

Was there, then, a material misrepresentation? This court rephrased the standard just quoted by holding that an insurer can void a policy for material misrepresentation if an insurance application "(1) [] contain[s] answers that are false, incomplete, or misleading, *and* (2) the false, incomplete, or misleading answers [are] material to the risk insured against or contemplated by the policy." *Carroll v. Metro. Ins. & Annuity Co.*, 166 F.3d 802, 805 (5th Cir. 1999) (emphasis in original). We cited a Mississippi precedent that held the particular misstatement there "might reasonably have influenced the company not to make the contract of insurance." *Id.* at 805 n.10 (citing *Prudential Ins. Co. v. Russell's Estate*, 274 So. 2d 113, 116 (Miss. 1973)). We then identified additional relevant effects by stating that "a fact is material if it might have led a prudent insurer to decline the risk, accept the risk only for an increased premium, or otherwise refuse to issue the exact policy requested by the applicant." *Id.* at 805.

"Misrepresentation" also was defined in the Viking policy: "providing information to us that is known by you to be false, misleading or fraudulent." Thus, the policy requires knowledge of the falsity. The plaintiffs argue "the phrase 'known by you to be false' converts the inquiry from an objective analysis to a subjective one regarding Hawkins' intent." Because Hawkins testified she "did not intend to mislead or defraud Viking," the plaintiffs contend there is a fact dispute as to whether there was

No. 21-60907

misrepresentation under the Policy.  A standard definition of "knowledge" is "awareness or understanding of a fact or circumstance." BLACK'S LAW DICTIONARY 950 (9th ed. 2009).  Strictly as matter of definition, knowledge exists if an individual is aware of the relevant facts.[5]  Intent, as distinguished from knowledge, is not a separate factual question.

Here, a knowing misstatement in the application about the drivers in the household was material if it would have caused Viking either not to issue the policy or to increase the premium.  The following is undisputed.  Viking required Hawkins to disclose all persons of legal driving age who resided with her.  Hawkins knew Bradley was living with her, was of driving age, and was not disclosed.  The only evidence as to the effect of Bradley's omission is from a Viking witness who stated the insured would have had a higher premium throughout the life of the policy.  In other words, Viking would not have refused to insure had it known about the son, but it would have charged more.  Indeed, that is what Viking did after the accident — force-placed the son on the policy and increased the premium.

In analyzing whether Viking has shown enough, we start with the possibility that failure to disclose the additional driver may not have had an effect on Viking's risk *for a UM claim*.  We suggest that possibility because "UM coverage proceeds are paid to the injured insured to cover the insured's own claims against uninsured third parties.  Liability insurance covers claims against the insured by third parties; UM insurance covers claims of the insured against uninsured third parties."  JACKSON AND

---

[5] Knowledge of existing facts can be successfully disputed.  In one case, an insured omitted he had high blood pressure on his insurance application.  *Life Ins. Co. of Va. v. Shifflet*, 359 F.2d 501, 503 (5th Cir. 1966).  The facts showed the insured indeed had high blood pressure, but he had never been told so.  *Id.* at 503–04.  Under Florida law, the court held there was no "knowing" misrepresentation.  *Id.* at 504 & 504 n.3.  Here, Hawkins had actual knowledge of the requested facts.

No. 21-60907

CHILDRESS, MISSISSIPPI INSURANCE LAW § 18:1. Potentially, then, the safety record, age, driving abilities, and even the number of insured drivers would not affect the premium charged for insuring against the risk that a future, as yet unidentifiable, at-fault driver of an uninsured vehicle would collide with the insured. Then again, maybe it would. Viking's evidence, though, did not address the risk in that way. The UM coverage was a separate component of the premium, but the record is silent as to whether the UM component would have changed if another driver were added to the policy. The only evidence was that the premium for the policy would have been increased because of the additional driver.

Though we pose this question, there has been no argument here that Viking's evidence was insufficiently focused. In addition, though we find no Mississippi state court decisions, this court has held that under that state's law, the specific coverage sought by an insured need not "be related to risks concealed by an insurance applicant in order for the concealed facts to be material." *Carroll*, 166 F.3d at 806 n.18 (quoting *Wesley v. Union Nat'l Life*, 919 F. Supp. 232, 234 (S.D. Miss. 1995)).[6] In the absence of any argument along these lines, we accept that materiality is not affected by the relationship between the false statement and the specific coverage being sought in litigation. It is enough that the falsity was material to the decision of the company to issue the policy at the agreed price.

Consequently, Viking *could have* voided the policy. Of course, Viking did not do so. Instead, it chose to deny coverage. By not voiding, Viking's

---

[6] This also seems to be the majority rule: "In most jurisdictions, a misrepresentation is considered material and sufficient grounds for rescission or denial of a claim regardless of whether the fact misrepresented has any causal connection with the death or loss involved in the claim." John Dwight Ingram, *Misrepresentations in Applications for Insurance*, 14 UNIV. MIAMI BUS. L. REV. 103, 111 (2005).

policy remained in effect. Do the statutory and judicial prohibitions against limiting minimum UM coverage therefore still apply? We have been shown nothing from Mississippi caselaw to assist in deciding whether the rather demanding UM caselaw would apply to a voidable, but retained, insurance policy. Importantly, though, and to use the vernacular, this does not seem to us to be a situation in which the insurance company is trying to have its cake and eat it too. That is because the benefit to Viking was relatively small — maintaining a policy on one person's vehicles. Also, the insured received some benefit by still having insurance. Though ambiguities in insurance-policy terms are interpreted in favor of the insured, *Mississippi Farm Bureau Cas. Ins. Co. v. Powell*, 336 So. 3d 1079, 1084 (Miss. 2022), we are dealing here with ambiguity in what Mississippi law would be on these unusual facts. Seeking a reasonable legal interpretation will be our approach.

We conclude that if an insurer declines to exercise the greater power to void a policy, it still retains the lesser power to exercise a contractual right to deny coverage. The *Safeway* court was concerned that material misrepresentations undermine insurers' ability to make proper assessments of risk and set premiums. *Safeway*, 185 So. 3d at 980. Those same concerns are present here and are not altered by the fact that Viking chose not to void the policy. Accordingly, Viking had the right to deny the plaintiffs' claim.

AFFIRMED.